```
              UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE
                     NASHVILLE DIVISION

JONATHAN MALONE SR.,              )
                                  )
        Plaintiff,                )
                                  )
        v.                        )    NO.  3:11-1195
                                  )    Judge Campbell/Bryant
OFFICER MARK MOGHADDAM, et al.,   )    Jury Demand
                                  )
        Defendants.               )
```

TO: The Honorable Todd J. Campbell

### REPORT AND RECOMMENDATION

Defendants Mark Moghaddam and Jason Parker have filed their motion for summary judgment (Docket Entry No. 31). Plaintiff Malone has not responded in opposition, and the time within which he was required to do so has expired.

For the reasons stated below, the undersigned Magistrate Judge recommends that defendants' motion for summary judgment be granted and the complaint dismissed.

### Statement of the Case

Plaintiff Jonathan Malone, a prisoner proceeding pro se and in forma pauperis, has filed a letter (Docket Entry No. 1) deemed by the Court to constitute a complaint alleging that defendants Moghaddam and Parker, both officers employed by the Murfreesboro, Tennessee, Police Department, violated plaintiff's constitutional rights during his arrest on May 4, 2011. Specifically, plaintiff alleges that defendants used excessive force in taking plaintiff into custody and thereafter denied him medical treatment for his resulting injuries. Plaintiff also alleges that his arrest was "unlawful" and "false." Defendants

filed an answer denying liability and asserting certain affirmative defenses (Docket Entry No. 23).

**Standard of Review**

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the

Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## Analysis

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged his burden. Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991).

Plaintiff's excessive force claim. On the afternoon of May 4, 2011, defendants Moghaddam and Parker, uniformed officers of the Murfreesboro Police Department, responded to a call from fellow officer Rashad Howse requesting backup assistance at JD's Market in apprehending a suspect in connection with an arrest warrant (Docket Entry No. 34-3). Upon arriving at JD's Market, the defendant officers saw Officer Howse outside the market speaking with a man they knew to be plaintiff Jonathan Malone. After they got out of their patrol car, defendants overheard Officer Howse tell plaintiff Malone that he was under arrest, and that he needed to go back to the Murfreesboro Police Department with him.[1] Defendants then heard Mr. Malone argue with Officer Howse about being under arrest. (Id. at 2). After listening to plaintiff argue with Officer Howse, defendant Moghaddam informed plaintiff that he was under arrest and

---

[1] Plaintiff Malone had been at the Murfreesboro Police Department for questioning shortly before this encounter, but at that time apparently had not been the object of an arrest warrant.

3

ordered him to place his hands behind his back. Plaintiff Malone demanded to know the reason for his arrest. Defendant Moghaddam told plaintiff that a warrant had been issued for his arrest[2], that he was under arrest, and that he needed to turn around and place his hands behind his back. Defendant Moghaddam told plaintiff that he would be informed of the reason for his arrest upon his arrival back at the police station. (Id. at 3).

Plaintiff Malone continued to argue with the officers and yell about the reason why he was being arrested. Defendant Moghaddam instructed Malone multiple times that he was under arrest pursuant to an arrest warrant, and that he should put his hands behind his back. According to defendant Moghaddam's affidavit, plaintiff Malone stated, "No, I am not going!"

After plaintiff continued to disobey the officers' orders to place his hands behind his back, defendant Moghaddam reached for plaintiff's wrist to guide his arm behind his back but, according to defendant Moghaddam's affidavit, plaintiff "pulled away from me." (Id. at 3). At that point, defendant Moghaddam states that he employed "a common takedown technique to force Malone to the ground." Defendant Moghaddam characterized this technique as an amount of force consistent with the Murfreesboro Police Department's use of force policy. (Id.). As soon as plaintiff Malone was taken to the ground, he ceased resisting. Officers

---

[2]Plaintiff had been charged with the offense of rape and a warrant issued for his arrest by the General Sessions Court of Rutherford County on May 4, 2011. (Docket Entry 34-1). The record is unclear whether the defendant officers knew the nature of the offense charged at the time of plaintiff's arrest.

4

Howse and Moghaddam kept Mr. Malone "secure" while Officer Parker searched Mr. Malone and placed him in handcuffs. (Id. at 3-4).

Defendant Moghaddam denies that anyone "stomped" or placed a foot on plaintiff Malone's head at any time. (Id. at 4).

Defendant Parker placed Mr. Malone in the back of Officer Howse's patrol car and, at least to defendants' knowledge, Officer Howse drove plaintiff Malone to the Murfreesboro Police Department.

In his deposition (Docket Entry No. 34-5), plaintiff Malone agreed with many of the facts stated in defendant Moghaddam's affidavit. Plaintiff testified that, upon their arrival at JD's Market, defendants Moghaddam and Parker[3] told plaintiff that he was under arrest. Plaintiff demanded to know what he was under arrest for and protested that he "ain't done nothing." (Docket Entry No. 34-5 at 28-29). Plaintiff testified that the officers told him that he would be informed of the reason for his arrest when he arrived at the police department. Plaintiff testified that he said "no, I want to know now," and demanded that he be told the reason for his arrest. (Id. at 29).

Plaintiff testified that one of the officers told him that "if you don't make a move toward that car in two minutes, I'm going to put you down." (Id.). In response, plaintiff testified that he "lit up a cigarette." (Id.). Plaintiff further testified that the officers then "slammed my head on the concrete and bent me out of shape." (Id.).

Plaintiff later in his deposition testified that before he was taken to the ground defendant Moghaddam grabbed him by his

---

[3]In this deposition and in the complaint, defendant Parker is called, at various places, both "Parks" and "Price."

5

right arm. (Id. at 30-31). Plaintiff denied that he pulled his arm away, but he testified that he did "tense up." (Id.). Immediately thereafter, the officers "hip tossed" him and threw him to the ground. Plaintiff testified that defendant Parker then "come up with force and stomped my head" one time. (Id. at 32).

Plaintiff testified that he received injuries to his back, neck, hip, shoulders and head. (Id. at 33). When asked whether he had any visible injuries, he testified that he had "a couple little scratches that was starting to bleed on my elbow." However, he testified that his remaining injuries "didn't show." (Id. at 34). He testified that, at his request, photographs of his face and ear were made by the Murfreesboro Police Department but that he "wasn't bleeding." (Id.).

Authenticated medical records from the Murfreesboro Police Department filed in support of defendants' motion for summary judgment record that on May 4, 2011, the day of his arrest, plaintiff Malone complained that he "was dragged to the ground during arrest" and stated that "his right hip is sore." The record states that plaintiff's right hip had no edema or redness or open wounds upon examination. (Docket Entry No. 34-2 at 9). These medical records indicate that an intake evaluation was performed on plaintiff Malone on May 5, 2011. (Id. at 8-9). This evaluation records that plaintiff Malone stated that the arresting officers used force with him when they arrested him and that he complained of "head hurting, back, arms, ankles and the rest of his body." The evaluation records that plaintiff Malone "states he is sore from the arrest." (Id.). This evaluation contains no evidence that any visible injury was observed during the intake evaluation.

6

The medical records further state that photographs of plaintiff Malone's right ear and left cheek were made on May 8, 2011. These photographs are included in the record (<u>Id.</u> at 10) and show no visible injury to plaintiff.

The right to be free from excessive force is a clearly established Fourth Amendment right. <u>Neaque v. Cynkar</u>, 258 F.3d 504, 507 (6th Cir. 2001). To assess a claim of excessive force under the Fourth Amendment, the Court must inquire whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. <u>McCaig v. Raber</u>, 2013 WL 628420 at *3 (6th Cir. Feb. 21, 2013) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)). Under this standard, the Court must consider the totality of the circumstances, paying "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396. When police officers face what is essentially a fluid situation, they are entitled to graduate their response to meet the demands of the circumstances confronting them. (<u>Id.</u> at 396-97).

From the evidence summarized above, which is undisputed unless otherwise stated, the undersigned Magistrate Judge finds that the defendant officers employed gradual and physically more

aggressive methods in accomplishing the arrest of plaintiff Malone. After plaintiff refused to comply with numerous verbal commands to place his hands behind his back for handcuffing, defendant Moghaddam warned plaintiff that he would "take down" plaintiff if he refused to get in the patrol car. After plaintiff's continued refusal to comply with verbal commands and warnings, defendant Moghaddam attempted to grasp plaintiff's arm to guide it behind him for handcuffing. Though denying that he pulled away from defendant Moghaddam, plaintiff admitted that he "tensed up" when defendant Moghaddam attempted to grasp his arm. Only after less physical methods had been attempted without success did defendants take plaintiff Malone to the ground. Although there is a dispute in the testimony regarding whether defendant Parker "stomped" plaintiff's head, the undersigned finds that this disputed fact is not material in light of the undisputed lack of any visible injuries to plaintiff. From the entire record of this case, most of which is undisputed, the undersigned finds that no reasonable jury could return a verdict in favor of plaintiff Malone on this evidence. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Surles v. Andison</u>, 678 F.3d 452, 455-56 (6th Cir. 2012). For these reasons, the undersigned finds that the motion for summary judgment of defendants Moghaddam and Parker regarding a claim of excessive force should be granted.

<u>Deliberate indifference to plaintiff's serious medical needs</u>. Plaintiff Malone also claims that defendants have denied him medical treatment.

Pretrial detainees have a Fourth Amendment right to adequate medical treatment that is analogous to that of convicted prisoners under the Eighth Amendment. <u>Estate of Carter v. City of Detroit</u>, 408 F.3d 305, 311 (6th Cir. 2005).

The allegations in plaintiff's complaint regarding failure to receive medical treatments are found in two sentences near the bottom of Page 4. (Docket Entry No. 1 at 4). These allegations are wholly conclusory. For example, plaintiff alleges: "I asked to receive medical treatment which I never received." (<u>Id.</u>). Defendants have filed authenticated copies of medical records on plaintiff from the Rutherford County Adult Detention Center. (Docket Entry No. 34-2). This record indicates that plaintiff Malone was seen and examined on May 4, 2011, the date of his arrest, for complaints of soreness in his right hip which plaintiff attributed to his being dragged to the ground during his arrest. Accordingly to the records, this examination revealed no edema, redness or open wounds at the time. Plaintiff's vital signs were rechecked on the early morning of the following day, May 5, 2011. Later on May 5, plaintiff underwent a complete intake evaluation during which he complained of soreness in various parts of his body from his arrest. Plaintiff also was seen in follow up by medical personnel on May 8 and May 11, 2011.

9

From a review of the foregoing, the undersigned Magistrate Judge finds no evidence whatever that defendants were deliberately indifferent to any serious medical needs of the plaintiff. Therefore, the undersigned finds that there is no genuine issue of material fact concerning plaintiff's claim of lack of medical care, and that defendants are entitled to judgment as a matter of law on this claim.

Qualified immunity. Defendants Moghaddam and Parker have also raised the defense of qualified immunity. The defense of qualified immunity shields government officials who perform discretionary functions from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Inasmuch as the undersigned finds that the actions of defendants Moghaddam and Parker in this instance did not violate plaintiff's constitutional right to be free of excessive force, the undersigned further finds that these two defendants are entitled to the defense of qualified immunity. For this additional reason, the undersigned finds that defendants' motion for summary judgment should be granted.

False arrest. Plaintiff in his complaint includes a conclusory claim for "false arrest." (Docket Entry No. 1 at 5). An arrest pursuant to a facially valid warrant is normally a complete defense to a federal claim of false arrest or false

imprisonment. <u>Voyticky v. Village of Timberlake</u>, 412 F.3d 669, 667 (6th cir. 2005). The undisputed record shows that defendants arrested plaintiff pursuant to a facially valid warrant charging him with the offense of rape. (Docket Entry No. 34-1). Therefore, as a matter of law, plaintiff's claim of false arrest lacks merit and is subject to summary judgment.

### **Recommendation**

For the reasons stated above, the undersigned Magistrate Judge recommends that the motion for summary judgment filed on behalf of defendants Moghaddam and Parker be granted and that the complaint be dismissed with prejudice. If this Report and Recommendation is accepted, the undersigned further recommends that any pending motions be denied as moot.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

ENTER this 28th day of February, 2013.

/s/   John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge